493 So.2d 75 (1986)
Maria R. HALPIN, a Single Woman, Appellant,
v.
William Harry HILDERBRAND, and State Farm Mutual Automobile Insurance Co., One State Farm Plaza, Bloomington, Il., 61701 (9785), a Foreign Corporation Authorized to Do Business in the State of Florida, Appellees.
No. 85-396.
District Court of Appeal of Florida, Fourth District.
August 27, 1986.
Carol M. Anderson and Philip S. Anderson of Anderson & Anderson, P.A., Fort Lauderdale, for appellant.
Thomas T. Grimmett and Candace D. Korthals of Grimmett & Korthals, Fort Lauderdale, for appellees.
DOWNEY, Judge.
Appellant, Maria R. Halpin, was injured by appellee, William Harry Hilderbrand, an uninsured motorist. Maria sought to recover her damages against appellee, State Farm Mutual Automobile Insurance Co., but suffered a summary final judgment, in which the trial court apparently relied upon Florida Farm Bureau Insurance Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1981), in concluding that State Farm's policy did not afford coverage for the accident in question.
On June 16, 1984, Halpin was operating her automobile on Commercial Boulevard in Fort Lauderdale, Florida. She changed lanes to proceed to a gas station and inadvertently "cut off" Hilderbrand's vehicle. Hilderbrand followed her to the gas station, jumped out of his truck while it was still running, and came after Halpin. Halpin testified that, from the look on his face, he appeared angry, and he seemed intoxicated because he was swaying back and forth. Halpin was frightened and she jumped back into her car. Hilderbrand stated that he hated people that cut him off *76 the road and began punching Halpin in the face through the open car window.
When Halpin learned Hilderbrand was uninsured, she sued State Farm for declaratory relief, seeking damages for the injuries she sustained at Hilderbrand's hands. From an adverse summary judgment Halpin has perfected this appeal.
State Farm's legal position in the trial court, and here, is that, if Hilderbrand owned an automobile liability policy, the insurer would not be liable to Halpin because "[f]or automobile liability insurance to apply, there must be an automobile accident with the negligence of one party being the proximate cause of injury to another involved in that accident. Our facts show that Halpin's injuries were caused by the intentional battery of Hilderbrand... ." While liability insurance does not ordinarily cover intentional torts committed by the insured, we are here dealing with uninsured motorist insurance purchased by Halpin to cover her in the event of an accident with an uninsured motorist, such as Hilderbrand. State Farm's contentions were expressly treated and rejected in Leatherby Insurance Company v. Willoughby, 315 So.2d 553, 553-554 (Fla.2d DCA 1975), where the trial court explicated the distinctions between the two types of insurance stating:
Obviously, the case turns on whether appellee's injuries were caused by "accident."
To begin with, it is of critical importance that we keep in mind that we are here concerned with the liability of an insurance carrier to its own insured under the uninsured motorist provision of its liability policy issued to the insured as distinguished from the liability of an insurance carrier, as an indemnitor of the tortfeasor, under the ordinary liability policy issued for that purpose. Since uninsured motorist coverage is of comparatively recent vintage, most of the cases dealing with whether an intentional tort is an "accident" within the provisions of liability coverage involved construction of the latter type policy, i.e., the ordinary liability policy.
The opinion goes on to recognize that early on the cases used to determine whether an intentional tort was an accident were straight liability policies, not cases construing uninsured motorist provisions. Thus, the matter was being viewed from the standpoint of the tortfeasor rather than the innocent victim. The Willoughby opinion then cites the more recent cases involving uninsured motorist coverage as being construed from the innocent victim's standpoint because:
First of all, we allude to our first observation that the two types of policies are conceptually dissimilar. Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor, is the "insured"; and clearly, viewing the matter from the standpoint of the innocent victim, the injury is an "accident." This consideration as well articulated in Celina Mutual Insurance Company v. Saylor, [35 Ohio Misc. 81, 301 N.E.2d 158 (1973)] wherein it was said:
"[In this case] we deal with the subject of uninsured motorists coverage. The [injured parties] have paid the insurance premiums and have consciously contracted with the [carrier] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
"All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to [harm] herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from *77 the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint."
Id. at 554-555 (footnotes omitted). Finally, Willoughby adds several other reasons to so interpret uninsured motorist coverage. The statute that requires the furnishing of uninsured motorist coverage was designed for the protection of injured persons, not for the benefit of tortfeasors or insurance companies. Furthermore, the public policy against allowing self-indemnification for intentional wrongs is not offended. See also Milwaukee Mutual Insurance Co. v. Butler, 615 F. Supp. 491, 495 (D.C.Ind. 1985).
We hold that the factual circumstances surrounding Halpin's injuries constituted an accident arising out of the use, maintenance or operation of a motor vehicle and the incident was, thus, covered by the uninsured motorist provisions of Halpin's policy. Halpin was in the process of operating her automobile when she unintentionally impeded the progress of another motorist who became enraged, followed her into a gas station, and, while she was seated in her car, proceeded to commit a battery upon her. One could not seriously question the nexus between Halpin's automobile and the injury, and that is the critical factor, as was held in Government Employees Insurance Company v. Novack, 453 So.2d 1116 (Fla. 1984), and in Fortune Insurance Co. v. Ferreiro, 458 So.2d 834 (Fla.3d DCA 1984). The Shaffer case relied on by the trial court is easily distinguishable as pointed out in Allstate Insurance Co. v. Gillespie, 455 So.2d 617 (Fla.2d DCA 1984). Novack, decided long after Shaffer, also demonstrates Shaffer's inapplicability to the facts of this case.
Accordingly, the summary final judgment appealed from is reversed and the cause is remanded for further proceedings consistent herewith.
GLICKSTEIN and GUNTHER, JJ., concur.