510 So.2d 649 (1987)
NORTHERN INSURANCE COMPANY OF NEW YORK, Appellant,
v.
Ishamel Paul HAMPTON, Appellee.
No. 86-2003.
District Court of Appeal of Florida, Fifth District.
July 30, 1987.
*650 Reinald Werrenrath, III, and Chris Ballentine of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for appellant.
Gardner Sharpe, Jr., P.A., Altamonte Springs, for appellee.
COWART, Judge.
This case involves the question of whether a certain death is within an uninsured motorist insurance provision.
Appellant, as insurer, issued to Ishamel P. Hampton, as insured, an insurance policy providing uninsured motorist coverage on a pick-up truck. On a certain day the insured's son Bruce, a covered person, was driving his father's truck and one Anderson was driving an uninsured vehicle in the same direction. Anderson cut into the lane in which Bruce was driving. Bruce made an obscene gesture at Anderson. At a stop light, after angling the truck to block a right hand turn lane which Anderson was attempting to use, Bruce stopped, exited the insured truck, ran back and slapped the windshield and driver's window of the Anderson vehicle while making a threat. Anderson, seated in his uninsured vehicle, shot Bruce dead. The insured, as personal representative of the estate of his son Bruce, made a claim against his insurer for uninsured motorist benefits as to his son's death. The insurer filed an action for declaratory judgment for determination of its obligation under the policy. The trial court held for the insured, finding that the shooting "incident" was an accident which arose out of the use, operation and maintenance of a motor vehicle.
The insurer appeals and argues that its uninsured motorist coverage does not apply for two reasons: (1) Bruce's death resulted from the intentional act of Anderson shooting Bruce and was not an accident as required by the policy and (2) Bruce's death resulted from Anderson's intentional act, whether wrongful or justified, and did not result from Anderson's ownership, maintenance or use of Anderson's uninsured motor vehicle such as is required by the uninsured motorist's policy.
The uninsured motorist policy provides that the insurer will pay the insured all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle for bodily injuries "caused by an accident" when the uninsured owner's or driver's liability results from the ownership, maintenance or use of the uninsured motor vehicle.[1]
The insurer's argument that the shooting of Bruce by Anderson was intentional, and therefore not an accident, is very interesting[2]; nevertheless, we do not treat that argument as a separate matter in this case and proceed to the insured's second point. Under its uninsured motorist coverage, the insurer is liable only for the damages for which the owner or driver of an uninsured motor vehicle would be liable, when such damages result from the ownership, maintenance, or use of the uninsured motorist's vehicle. The uninsured motor vehicle was, *651 of course, Anderson's vehicle. Therefore, in effect, the uninsured motorist insurer in this case is liable to its insured for Bruce's death only under circumstances that, if Anderson's motor vehicle had been covered by liability insurance Anderson's liability carrier would have been legally liable in damages as a result of Anderson killing Bruce. Under the facts in this case, if Anderson had been covered by automobile liability insurance that liability insurer would not be liable on account of Anderson having killed Bruce. This is true first because although often alleged and argued to the contrary, an intended act is not a negligent act. However, more importantly, Anderson's automobile liability carrier, had one existed, would not have been liable for Bruce's death because Bruce's death did not result from Anderson's use of his motor vehicle but from Anderson's use of his gun.
In Reynolds v. Allstate Insurance Company, 400 So.2d 496, 497 (Fla. 5th DCA 1981), the insured vehicle's owner, Reynolds, who was assaulted by an intruder who had hidden in Reynolds' vehicle, sued his own carrier. This court held the insurer was not liable because the insured vehicle was merely the physical situs where Reynolds was injured by his hidden assailant and there was no "causal connection" between the automobile and Reynolds' injuries. Government Employees Insurance Company v. Novak, 453 So.2d 1116 (Fla. 1984) held that in order for liability coverage to apply there must be some nexus between the motor vehicle and the injury. In Hernandez v. Protective Casualty Insurance Company, 473 So.2d 1241 (Fla. 1985), the court agreed with Reynolds but found that in that case the vehicle was more than just the situs of the insured's injuries. In Fleming v. Hill, 501 So.2d 715 (Fla. 5th DCA 1987), Fleming left his insured vehicle and went and shot Dunn who was seated in Dunn's vehicle. This court held that the shooting and death of Dunn did not arise out of any use of Fleming's insured vehicle. We note that the policy in Fleming covered injuries arising out of the ownership, maintenance or use of a motor vehicle, while the policy in this case more carefully restricts uninsured motorist coverage to injuries arising out of the ownership, maintenance or use of the uninsured motor vehicle. In Florida Farm Bureau Insurance Company v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981), it was held that the victim who was shot from an insured vehicle could not recover from the tortfeasor's insurer because the victim's injury was not caused by the insured vehicle but by the gunshot even though the shooting resulted from ill feelings which resulted from the use of the motor vehicle. Likewise in Nationwide Mutual Fire Insurance v. Race, 508 So.2d 1276 (Fla. 3d DCA 1987), following an automobile accident, Race exited his insured vehicle and was assaulted by Thompson, the driver of an uninsured vehicle. The court held that Race could not recover from his own uninsured motorist coverage because his injuries resulted "not from an accident arising out of the ownership, maintenance and use of Thompson's uninsured vehicle but was, rather, an intervening criminal act by Thompson."
Bodily injuries resulting from an intentional gunshot are not caused by an accident arising out of the ownership, maintenance or use of a motor vehicle, whether the shooter or the victim was occupying a motor vehicle before or at the time of the shooting, and notwithstanding that the shooting may have resulted from ill will that arose out of some incident involving the use of the motor vehicle.
In this case the death of Bruce did not arise out of the ownership, maintenance or use of Anderson's uninsured motor vehicle.
The summary judgment for the insured is reversed and the cause is remanded with directions that, upon proper motion, summary final judgment be entered in favor of the insurer.
REVERSED and REMANDED.
DAUKSCH, J., and BEVERLY, V.Q., Associate Judge, concur.
NOTES
[1] The uninsured motorist coverage provision reads:

We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle.
The policy defines accident to include:
continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended.
[2] See Clemmons v. American States Insurance Company, 412 So.2d 906 (Fla. 5th DCA 1982), rev. denied, 419 So.2d 1196 (Fla. 1982), 34 A.L.R.4th 755 (1984), holding that the death of a person resulting from someone using a gun in self defense was not an accident within the meaning of that word in an insurance policy. See also Government Employees Insurance Company v. Novak, 453 So.2d 1116 (Fla. 1984); Halpin v. Hilderbrand, 493 So.2d 75 (Fla. 4th DCA 1986); J.C. Penney Life Insurance Company v. Moser, 490 So.2d 1275 (Fla. 5th DCA 1986), rev. denied, 500 So.2d 545 (Fla. 1986).