542 So.2d 347 (1989)
Richard T. RACE and Suzanne Race, His Wife, Petitioners,
v.
NATIONWIDE MUTUAL FIRE INSURANCE CO., Respondent.
No. 70997.
Supreme Court of Florida.
February 23, 1989.
Rehearing Denied May 26, 1989.
Edward R. Blumberg of Deutsch & Blumberg, P.A. and Jeanne Heyward, Miami, for petitioners.
Michael J. Murphy of Gaebe, Murphy & Mullen, Coral Gables, for respondent.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, amicus curiae for Allstate Ins. Co.
PER CURIAM.
We review Nationwide Mutual Fire Insurance Co. v. Race, 508 So.2d 1276 (Fla. 3d DCA 1987), because of asserted conflict with the decisions of this Court in Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984), and Hernandez v. Protective Casualty Insurance Co., 473 So.2d 1241 (Fla. 1985), and the decisions of the Second and Fourth Districts in Halpin v. Hilderbrand, 493 So.2d 75 (Fla. 4th DCA 1986), and Allstate Insurance Co. v. Gillespie, 455 So.2d 617 (Fla. 2d DCA 1984). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The question presented is whether petitioners ("Race") may recover under the uninsured motorist ("UM") provision of their automobile insurance policy for injuries received from an uninsured motorist's intentional assault at the scene of a prior automobile accident.
Race was stopped at a red light when he was rear-ended by Robert Thompson. Race walked back to Thompson, who remained in his car, to exchange identification and insurance information. After a discussion about what to do with the cars and whether to call the police, Thompson stepped out of his car and asked Race for identification. As Race reached into his bag to remove his insurance papers and identification, Thompson, who thought Race was pulling out a gun, knocked Race to the ground. When Race tried to get up, Thompson hit him again. Race suffered permanent injuries, including broken teeth, a broken jaw, and a fractured hand.
*348 Thompson was uninsured and Race sought both personal injury protection ("PIP") and UM benefits from his own insurer, respondent Nationwide. After initially denying Race's claim for PIP coverage, Nationwide stipulated that it was liable for PIP benefits because Race's injuries "arose out of the maintenance, use or operation of his motor vehicle," and the trial court entered summary judgment in favor of Race on the PIP claim.
Nationwide denied Race's UM claim, contending that his injuries resulted from "an intentional assault by a third person outside of the plaintiffs' motor vehicle and not as a result of the operation, maintenance or use of an `uninsured motor vehicle.'" The trial court, however, granted summary judgment in favor of Race, finding that Race's injuries did "result[] from an accident arising out of the ownership, maintenance or use of the uninsured or underinsured vehicle." The trial court also found that Nationwide was estopped from denying UM benefits based upon the judgment rendered in the prior PIP coverage litigation.
The Third District reversed. The district court first held there was no estoppel because the coverage issues in PIP and UM were not identical. The court then applied the nexus test for coverage established by this Court in Novak and found an insufficient nexus between the uninsured vehicle and the injury to allow recovery.
In Novak, a woman was shot in her car by a stranger when she refused to give him a ride. In our opinion, we recognized that two questions had to be considered in construing the policy language which provided PIP coverage for an "`accident ... arising out of the ownership, maintenance, or use of a motor vehicle.'" 453 So.2d at 1118. We first held that from the victim's perspective, the event was a completely unexpected and unusual occurrence and therefore qualified under the policy language as an "accident." Next, we recognized that the phrase "arising out of" does not have the same meaning as "proximately caused by," and that the language of the policy should be liberally construed to effect broad coverage. Thus, we held that while there must be some nexus between the motor vehicle and the injury, the automobile itself need not cause the injury. The court ruled that Ms. Novak was entitled to PIP benefits because there was
a highly substantial connection between Ms. Novak's use of the motor vehicle and the event causing her fatal injury. Obtaining a ride in or possession of the motor vehicle was what motivated the deranged Endicott to approach and attack the deceased.
Id. at 1119. Two years later in Hernandez, we reaffirmed the principles of Novak in upholding the payment of PIP benefits for injuries inflicted by a policeman as the insured exited his vehicle while being arrested for a traffic violation.
In the instant case, we are called upon to decide to what extent, if any, the principles of Novak should be extended to UM coverage. On the one hand, PIP and UM coverage may be viewed as similar because in both instances the insured has paid a premium for the coverage. On the other hand, UM is a limited form of coverage which exists for the sole purpose of providing a source of financial responsibility for the uninsured or underinsured tortfeasor. Allstate Ins. Co. v. Boynton, 486 So.2d 552, 557 (Fla. 1986).
In Leatherby Insurance Co. v. Willoughby, 315 So.2d 553 (Fla. 2d DCA 1975), the district court of appeal specifically addressed the question of whether injuries inflicted intentionally by an uninsured motorist could be considered an accident for purposes of UM coverage. The court reasoned that because UM coverage was statutorily designed to protect injured persons, the determination of whether the act causing the injury was intentional or accidental should be viewed from the eyes of the innocent victim. Thus, the court upheld the recovery of UM benefits for injuries suffered when an uninsured tortfeasor intentionally drove his truck into the claimant. The district court of appeal in Halpin later adopted the rationale of Willoughby on this point. Courts in other jurisdictions have reached similar conclusions. Dyer v. *349 American Family Ins. Co., 159 Ill. App.3d 766, 111 Ill.Dec. 530, 512 N.E.2d 1071, appeal denied, 117 Ill.2d 542, 115 Ill.Dec. 399, 517 N.E.2d 1085 (1987); Redden v. Doe, 357 So.2d 632 (La. Ct. App. 1978); Keeler v. Farmers & Merchants Ins. Co., 724 S.W.2d 307 (Mo. Ct. App. 1987); Sciascia v. American Ins. Co., 183 N.J. Super. 352, 443 A.2d 1118 (Law Div. 1982), aff'd, 189 N.J. Super. 236, 459 A.2d 1198 (App.Div. 1983); Kish v. Central Nat'l Ins. Group, 67 Ohio St.2d 41, 424 N.E.2d 288 (1981); Celina Mut. Ins. Co. v. Saylor, 35 Ohio Misc. 81, 301 N.E.2d 721 (Com.Pl. 1973); Davis v. State Farm Mut. Auto. Ins. Co., 264 Or. 547, 507 P.2d 9 (1973). Contra McCarthy v. Motor Vehicle Accident Indemnification Corp., 16 A.D.2d 35, 224 N.Y.S.2d 909 (App.Div. 1962), aff'd, 12 N.Y.2d 922, 188 N.E.2d 405, 238 N.Y.S.2d 101 (1963).
For reasons of public policy, we are persuaded to accept the Willoughby rationale as an exception to the principle that UM coverage can never be broader than the automobile liability coverage it is intended to replace. The fact that there are legitimate reasons against permitting self indemnification for intentional wrongs and that many automobile liability policies contain exclusions for intentional acts should not militate against the recovery of UM benefits by an innocent person injured by the intentional act of an uninsured motorist.
However, we are unwilling to apply the liberal PIP interpretation of nexus to claims for UM benefits. To do so would substantially expand the legislative intent of providing UM coverage to those "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." § 627.727(1), Fla. Stat. (1987). As this Court said in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 237-38 (Fla. 1971), UM coverage "is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law... ." Thus, we believe that the term "arising out of the ownership, maintenance, or use" of a motor vehicle as contained in a UM policy should be given the same interpretation as that language is construed in automobile liability policies.
In analyzing liability coverage for an act arising out of the ownership, maintenance, and use of a motor vehicle, 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979), states:
It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
... .
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
(Footnotes omitted.)
There are several pertinent cases construing automobile liability policies which provided coverage for accidents arising out of the use of the uninsured automobile.
In Fleming v. Hill, 501 So.2d 715 (Fla. 5th DCA 1987), Dunn pulled his car behind Fleming's van, which obstructed his exit. When Dunn failed to move his car as far as Fleming thought necessary for adequate access, Fleming moved his van a short distance, got out, and shot Dunn who was still *350 sitting in his own car. After an extensive analysis of the many cases bearing on the issue, the court held that Dunn's death did not arise out of the use of Fleming's van.
The case of Watson v. Watson, 326 So.2d 48 (Fla. 2d DCA 1976), squarely addressed this issue. Bob Watson had been involved in an accident. His son, John, passed by the scene and stopped to assist his father. While John was cleaning out his father's possessions so that the car could be taken to the garage for repairs, John removed a loaded pistol that was unguarded by any safety mechanism, which discharged and killed him. Bob's automobile liability insurer defended against the wrongful death action of John's widow by asserting that the accident did not arise out of the ownership, maintenance, or use of the automobile. The district court reasoned:
[I]n order for liability coverage to exist, the incident must arise out of the ownership, maintenance or use of the car. The term "arising out of" has been interpreted to mean "originating from", "growing out of", or "flowing from." St. Paul Fire & Marine Insurance Company v. Thomas, Fla.App.4th, 1973, 273 So.2d 117. This does not require a showing of proximate cause between the accident and the use of the car, but there must be a causal connection or relation between the two for liability to exist. St. Paul Fire & Marine Insurance Company v. Thomas, supra.

326 So.2d at 49. Referring to the argument for coverage, the court said:
... We do not agree that this is sufficient to establish a causal relation between the death of John Watson and the use of the car.
Here, the car was merely the physical situs of the accidental discharge of the pistol. This could have occurred anywhere the pistol was located. The fact that the fatal event occurred at or near the car was fortuitous. There was no causal connection between it and the use of the auto. The death of John Watson occurred through the use of a pistol, not the use of a car. Thus, there is no coverage under Interstate's policy.
Id. at 49. See also Florida Farm Bureau Ins. Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), review denied, 402 So.2d 613 (Fla. 1981).
The case of Northern Insurance Co. v. Hampton, 510 So.2d 649 (Fla. 5th DCA), review denied, 518 So.2d 1275 (Fla. 1987), involved an analysis of similar language in a UM policy. Bruce, by virtue of driving his father's truck, had UM coverage. Anderson, who was driving an uninsured vehicle, cut into the lane in front of Bruce. Bruce made an obscene gesture at Anderson. At a stop light, Bruce got out of his truck, slapped Anderson's windshield, and made a threat. Anderson, while seated in his uninsured vehicle, shot Bruce dead. In holding that Bruce's death did not arise out of the ownership, maintenance, or use of Anderson's uninsured motor vehicle, Judge Cowart reasoned:
The uninsured motor vehicle was, of course, Anderson's vehicle. Therefore, in effect, the uninsured motorist insurer in this case is liable to its insured for Bruce's death only under circumstances that, if Anderson's motor vehicle had been covered by liability insurance Anderson's liability carrier would have been legally liable in damages as a result of Anderson killing Bruce. Under the facts in this case, if Anderson had been covered by automobile liability insurance that liability insurer would not be liable on account of Anderson having killed Bruce... . Anderson's automobile liability carrier, had one existed, would not have been liable for Bruce's death because Bruce's death did not result from Anderson's use of his motor vehicle but from Anderson's use of his gun.
Id. at 650-51.
The decision in Halpin v. Hilderbrand, 493 So.2d 75 (Fla. 4th DCA 1986), appears contrary to this analysis. While driving her automobile, Halpin inadvertently cut off Hilderbrand's vehicle. Hilderbrand threatened Halpin when she stopped at a filling station. When Halpin jumped back into her car, Hilderbrand began punching her through the window. Hilderbrand was uninsured, so Halpin made a claim under *351 her UM policy. The district court of appeal reversed a summary judgment for the insurer and held that Halpin's injuries arose out of the use, maintenance, or operation of her automobile.[1] The court cited Novak in support of its nexus analysis.
In the instant case, a minor traffic accident was caused by the negligence of Thompson, the driver of the uninsured vehicle. No injury resulted from this accident. Both drivers then got out of their cars, surveyed the damages, and discussed whether or not the police should be called. At this point, the claimant, Race, reached into his bag to remove his insurance papers and identification. Believing that Race was about to pull out a gun, Thompson assaulted Race and caused the injuries for which the claims were made. The most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties. It had nothing to do with Race's injuries, which only came about several minutes later when Thompson thought Race was reaching for a gun.
Assuming the issue were liability coverage for Thompson and that Thompson's actions which caused the injury were negligent rather than intentional (thereby obviating any intentional act exclusion), no one could reasonably say that the act which caused the injury was covered under Thompson's automobile liability policy. The same analysis is applicable to uninsured motorist coverage because the accident must arise out of the use, maintenance, or operation of the uninsured motor vehicle.
In its opinion, the court below assumed that the PIP nexus analysis of Novak was applicable to UM coverage but held that there was an insufficient nexus to permit recovery.[2] Because we have rejected the Novak standard for nexus in UM cases, we need not pass on whether the court's application of the Novak standard to the facts of this case was correct. Clearly, the connection between Race's injury and Thompson's motor vehicle was too tenuous to provide UM coverage. Therefore, except for its use of the Novak nexus analysis to analyze a UM claim, we approve the opinion below. Because Race did not argue the estoppel issue before this Court, there is no reason to address it in this opinion. To the extent of conflict herewith, we disapprove of the opinion in Halpin.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs with an opinion.
BARKETT, J., concurs in result with an opinion.
McDONALD, Justice, concurring.
I concur. I also note that the PIP coverage in Nationwide's policy comes from an accident arising out of the ownership, maintenance, or use of a motor vehicle. The uninsured motorist coverage comes from an accident arising out of the ownership, maintenance, or use of the uninsured vehicle.
BARKETT, Justice, concurring in result.
Having decided that UM coverage is available for injuries which have been intentionally inflicted, majority opinion at 348, I can see no intellectual basis for applying a different test for PIP and UM. Logically they should be the same so long as the accident arises out of the ownership, maintenance, or use of the uninsured vehicle, as pointed out by Justice McDonald. Indeed, other than rejecting Novak, I cannot discern from the majority opinion precisely what test will control this issue in the future.
*352 I believe the policies governing Florida automobile insurance law support an application of Novak in this context. While it is true that we have held UM to be faultbased, Boynton, 486 So.2d at 557, this fact does not require the result reached by the majority. Certainly, UM is available only when the uninsured motorist is at fault, id. at 557-58, but its purpose  to indemnify the injured party[*]  remains the same as that governing PIP. I believe the common purpose should dictate a common analysis.
Nevertheless, I concur in the result because I agree with the Third District's conclusion that the connection between Race's injury and Thompson's motor vehicle, under the circumstances presented here, is too tenuous to meet the Novak test.
NOTES
[1] PIP insurance covers injuries which arise out of the ownership, maintenance, or use of any motor vehicle; whereas automobile liability UM coverage contemplates injuries which arise out of the ownership, maintenance, or use of the tortfeasor's motor vehicle.
[2] The court did not address the question of whether Thompson's intentional act could be considered an accident.
[*] See Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 237-38 (Fla. 1971).