548 So.2d 830 (1989)
Virginia Perry FOWLER, As Personal Representative of the Estate of Ferman Ellis Fowler, Deceased, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Appellee.
No. 88-462.
District Court of Appeal of Florida, First District.
September 8, 1989.
Joshua A. Whitman, of Lewis, Paul, Isaac & Castillo, Jacksonville, for appellant.
*831 Jack W. Shaw, Jr., and J. Stephen O'Hara, Jr., of Mathews, Osborne, McNatt & Cobb, Jacksonville, for appellee.

ON REHEARING
Upon consideration of appellee's motion for rehearing, and the Florida Supreme Court's decision in Race v. Nationwide Mutual Fire Ins. Co., 542 So.2d 347 (Fla. 1989), we grant rehearing, withdraw our prior opinion in this case, and substitute the following opinion.
WENTWORTH, Judge.
Appellant seeks review of a final summary judgment entered in a declaratory judgment action brought to determine whether appellee State Farm Mutual Automobile Insurance Company had a duty to defend its insured, James Wayne Ortagus, against claims made by appellant, and whether appellant, the wife and personal representative of the estate of the deceased victim, was entitled to benefits under the insured's policy. The trial court found as a matter of law that the policy did not provide liability coverage for the insured's fatal shooting of appellant's husband on grounds that the shooting was intentional rather than accidental, and did not arise out of the ownership, maintenance, or use of the insured's vehicle. We agree that, in light of the supreme court's pronouncement in Race v. Nationwide Mutual Fire Ins. Co., 542 So.2d 347 (Fla. 1989), there was an insufficient connection between the insured's vehicle and the victim's injuries to effect coverage under the terms of the policy.
A jury convicted James Wayne Ortagus of manslaughter with a firearm in the shooting death of appellant's husband, Ferman Ellis Fowler. The conviction was reversed on appeal. Ortagus v. State, 500 So.2d 1367 (Fla. 1st DCA 1987). A second jury again convicted Ortagus of the same crime. An appeal of that conviction was per curiam affirmed by this court. Ortagus v. State, 528 So.2d 1188 (Fla. 1st DCA 1988). Appellant instituted a wrongful death action against Ortagus, alleging that Ortagus was negligent in the shooting death of her husband. Appellant made claims for the bodily injury liability insurance coverage issued to Ortagus by appellee State Farm. State Farm instituted an action seeking a declaratory decree that its policy did not provide coverage for the wrongful death claim against Ortagus, and that it had no duty to defend Ortagus in that action.
The incident giving rise to the manslaughter conviction and wrongful death claim occurred in the parking lot of a pizzeria. The testimony of appellant, Mrs. Fowler, indicated that as her husband drove his vehicle into the parking lot, she observed Ortagus pulling his pickup truck out of a parking space. Ortagus was looking over his shoulder as he backed out, but apparently did not see or acknowledge the Fowler vehicle. Mrs. Fowler stated that she warned her husband that Ortagus was not watching. Mr. Fowler hesitated, continued moving forward, did not stop and then sounded his horn. Ortagus turned around, saw the Fowlers, smiled at them and motioned them into a parking space in front of the Ortagus' truck. Ortagus' truck was next seen approximately 10 to 12 feet behind the parked Fowler vehicle with the driver's side of the truck facing the back of the Fowler vehicle. Ortagus was then described as sitting in the truck and staring at the occupants of the Fowler vehicle. Mr. Fowler got out of his vehicle and walked up to the truck, asking Ortagus if he had a problem. Ortagus' testimony indicated that he did not intend to shoot Fowler, but responded to Fowler's threats to drag him out of his truck by drawing his gun.
An eyewitness and companion of the Fowlers testified that he saw Ortagus lift a gun up in his hand and state, "Don't make me do this." A single shot went off, and Mrs. Fowler then saw her husband clutching his chest. The eyewitness testified that he watched Ortagus shoot Fowler one time in the chest. Ortagus left the scene in his truck. Both men were alleged to have been drinking that afternoon.
Ortagus testified in the criminal proceedings that a stranger had rushed up to his truck calling out, "Do you have a problem," *832 and had threatened him. Ortagus testified that he was frightened by the stranger, who was extremely large and appeared to be on drugs or drinking. He stated he shot Fowler when Fowler reached inside the truck to grab him. Ortagus testified that he had a confrontation with the Fowler vehicle, which caused him to stop as he was pulling out of his parking space. Although the vehicles never collided, they were said to have come as close as three feet to each other. Ortagus testified that he had no intentions of shooting anyone.
The policy under which Ortagus was insured provided:
We will:
1. Pay damages which an insured becomes legally liable to pay because of:
a. Bodily injury to others, and ..., caused by accident resulting from the ownership, maintenance or use of your car; and
2. Defend any suit against an insured for such damages with attorneys hired and paid by us.
The parties stipulated in the declaratory judgment action that transcripts from the two criminal trials would be used as if they were depositions taken in the instant cause, and excerpts of those trial transcripts were filed with the trial court. Following a hearing the trial court granted appellee's motion for summary judgment, stating that under the circumstances of the case the insurance policy did not provide liability coverage for Ortagus with regard to Fowler's injuries or to appellant's claims for damages, did not require State Farm to provide a defense to Ortagus in the wrongful death action, and did not provide for bodily injury liability benefits for appellant. The trial court based its conclusion on findings that the shooting was not an accident but was instead an intentional act motivated by fear, and that there was no causal relationship between the insured's vehicle and the victim's injuries as the incident did not arise out of the ownership, maintenance or use of the vehicle. It noted that courts have declined coverage if the vehicle is simply the situs of the injury or if the injury was merely incidental to the use of the vehicle.
In Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla. 1984), the supreme court approved a broad nexus test in determining whether injuries arose from the ownership, maintenance, or use of a motor vehicle under a policy of insurance. Novak emphasized that proximate cause is not required, and that it is generally sufficient if there is some nexus between the motor vehicle and the injury. While the circumstances of the present case may satisfy this broad standard, Novak involved a claim for personal injury protection benefits whereas the present case involves a claim for liability benefits.
The supreme court distinguished Novak in the recent case of Race v. Nationwide Mutual Fire Ins. Co., 542 So.2d 347 (Fla. 1989)[1], limiting the broad nexus test approved in Novak to claims for personal injury protection benefits. Race involved a claim for uninsured motorist benefits, and the court established that in this context there must be a closer connection than a mere nexus between the motor vehicle and an injury. In analyzing the case the court in Race purported to apply the same standard for uninsured motorist coverage as it would apply for liability coverage, and quoted from 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979), for the proposition that:
Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained. Rather, the courts have only required that some form of causal relationship exist... . However, liability does not extend to results distinctly remote, though within the line of causation.
In Race an altercation between motorists ensued after a vehicular collision, and the *833 court determined that the connection between the motor vehicle and injuries sustained during the altercation was too tenuous to support uninsured motorist coverage. In reaching this conclusion the court acknowledged that the use of the automobile "created an atmosphere of hostility between the parties," but noted that the injuries occurred during the ensuing confrontation between the parties when one thought the other was reaching for a gun.
The present case is like Race in that the use of the automobile initially produced an atmosphere of hostility leading to a personal confrontation which escalated and resulted in injury. While Ortagus remained in his vehicle, whereas the participants in Race both exited their vehicles, such physical situs does not distinguish the cases or satisfy the causation standard for liability benefits as applied in Race to an uninsured motorist claim.
Because there was not a sufficient relationship between Ortagus' use of his motor vehicle and Fowler's injury, liability coverage is not provided under Ortagus' policy of insurance and summary judgment was properly entered.[2] We therefore affirm the order appealed.
ERVIN and ZEHMER, JJ., concur.
NOTES
[1] The supreme court released its decision in Race after briefing in this court was completed in the present case, and Race remained pending in the supreme court on rehearing when we issued our original opinion. The parties have addressed the applicability of Race on rehearing in the present case.
[2] Having resolved the case on this basis, we do not address the parties' further argument as to the correctness of the trial court's additional finding that Fowler's injury was not an accidental occurrence under the terms of Ortagus' insurance policy.