799 So.2d 334 (2001)
LANCER INSURANCE CO., Appellant,
v.
Alfonso GOMEZ, Esperanza M. Lopez, and Maria Ramirez, as Personal Representative of the Estate of Juan Chich, Appellees.
No. 3D00-2965.
District Court of Appeal of Florida, Third District.
October 17, 2001.
David R. Howland and Philip Glatzer, Coral Gables, for appellant.
Colson Hicks & Eidson, Marc Cooper and Maureen E. Lefebvre, Coral Gables, for appellees.
Before SCHWARTZ, C.J., SORONDO, J. and NESBITT, Senior Judge.
PER CURIAM.
Lancer Insurance Co. (Lancer), appeals the trial court's non-final order, granting *335 motion for partial summary judgment, filed by Alfonso Gomez, his wife, Esperanza Lopez and the personal representative of Juan Chich's estate, Maria Ramirez, (collectively, the plaintiffs). The trial court determined that Lancer's automobile liability insurance provided coverage for shooting injuries of plaintiffs that occurred subsequent to the hijacking of a jitney bus they had been riding.

I. FACTS
On February 16, 1996, Gomez and Chich paid $1.25 to board a jitney bus in Miami Dade County. The jitney bus was owned and driven by Leopoldo Baltodano and operated pursuant to a transportation permit issued to Red Top Transportation by the County. Red Top assigned the permit to Metro Limo, Inc. as part of a joint venture business arrangement. Red Top supplied the transportation permit for the routes and Metro Limo supplied the jitneys. Baltodano paid a fee to Metro Limo for the right to service the bus route.
The bus was hijacked by three men and driven to a deserted avocado grove where the driver and passengers were robbed. As the hijackers were leaving, Chich attacked one of his assailants and was shot and killed. The hijackers then fired multiple shots into the jitney bus hitting and paralyzing Gomez.
The plaintiffs sued Metro Limo and Red Top alleging that Red Top was liable to them for damages sustained in the shooting incident. The plaintiffs' complaint sounded in negligence and alleged, first, that Baltodano was negligently trained on how to respond to robbery attempts, and, second, that the failure to store passenger fares in a lock box aboard the jitney bus was negligence in that such a practice would have served to discourage robberies. Red Top demanded coverage from its automobile liability insurer, Lancer. Lancer denied coverage claiming that the policy did not include coverage of the jitney bus.
Plaintiffs entered into a settlement agreement with Red Top and Metro Limo for the total sum of $2,800,000.00. A portion of this settlement, totaling $810,000.00, was paid by other insurers for Red Top and Metro Limo, specifically: USF & G, Lloyds of London, and Biscayne Insurance Company. In the settlement agreement, plaintiffs agreed not to seek to enforce or satisfy the remainder of the judgment in any way against Red Top and/or Metro Limo, but rather to seek insurance coverage from Lancer to cover the difference.
Plaintiffs secured an assignment by Red Top of any rights it might have against Lancer. They filed a garnishment action asking the lower court to rule that coverage from Lancer's automobile liability insurance policy was available to them to cover the balance of the stipulated settlement amounts not paid by the other insurers. Lancer answered the writ of garnishment by denying that it owed any insurance coverage to the plaintiffs under its automobile liability insurance claiming, inter alia, that the subject jitney was not a "covered auto" under Lancer's automobile liability insurance policy; that injuries caused by criminal acts of third parties are not covered under a policy of automobile liability insurance, and that by releasing Lancer's insured, Red Top, prior to assignment of Red Top's rights to proceed against Lancer, the plaintiffs also released Lancer. Lancer also filed a counterclaim for a declaration that its automobile liability insurance policy does not provide any coverage for the damages sustained by the plaintiffs as a result of the criminal acts involved.
Lancer and plaintiffs filed cross motions for summary judgment to determine whether the incident resulting in Gomez's *336 injuries and the death of Chich was within coverage of the automobile insurance policy issued by Lancer to Red Top. The trial court granted plaintiffs' motion for partial summary judgment[1] and denied Lancer's motion for final summary judgment, upon the determination that Lancer's automobile liability insurance policy covered plaintiffs' injuries.

ANALYSIS
Lancer claims that the trial court erred in ruling that Lancer's automobile liability insurance policy provides coverage for the shooting incident that gave rise to plaintiffs' injuries. We agree and reverse.
Lancer's insurance policy provides payment for the following liability coverage:
[a]ll sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by the ownership, maintenance or use of a covered "auto".
The policy extended coverage for three types of "covered autos": specifically described autos, hired autos and non-owned autos.
Specifically described autosOnly those "autos" described in item three of the declarations for which a premium charge is shown.
Hired autosOnly those "autos" you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent or borrow from any of your employees or partners or members of their households.
Non-owned autosOnly those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
Neither the jitney bus nor the joint venture between Red Top and Metro Limo were listed under item three or any other item in the insurance policy. Plaintiffs concede that the jitney bus was not covered under the specifically described auto or hired auto provisions. Instead, the plaintiffs allege that the jitney bus meets the definition of a "non-owned auto". We disagree.
The purpose of a "non-owned automobile clause" is to provide coverage to the insured while engaged in infrequent or casual use of an automobile other than one described in the policy. United States Sugar Corp. v. Nationwide Mut. Ins. Co., 475 So.2d 1350, 1352 (Fla. 2d DCA 1985); Henigson v. Davis, 305 So.2d 86, 88 (Fla. 4th DCA 1974). If courts were to hold otherwise, there would be no reason to specifically list automobiles to be covered on an insurance policy or more importantly, pay the premiums on specific automobiles, as all automobiles that are used in a business could fall under this "non-owned auto" coverage clause. The "non-owned auto" clause is not to exempt the insured from paying premiums on vehicles that are regularly used but rather to provide coverage for automobiles that are used in emergency or infrequent circumstances.
The evidence is undisputed that the jitney was used frequently. The jitney bus operated every day of the year with the exception of approximately three weeks. The repeated use of the jitney clearly does not fall under the intended definition of a "non-owned" auto. See Carter v. Peninsular Fire Ins. Co., 411 So.2d 960, 962 (Fla. 3d DCA 1982)(use of van for ten to twenty days a month, for period of four to six hours a day was too substantial *337 to fall within ambit of occasional or infrequent use). We find that the jitney bus was not covered under Lancer's insurance policy.
Even if the jitney bus had been covered under the non-owned auto provision, plaintiffs still would not be entitled to coverage for their injuries. The policy provides liability coverage for bodily injury caused by the ownership, maintenance or use of a covered "auto". The death of Chich and injuries to Gomez resulted from the use of the hijackers' gun not the use of the jitney bus. The mere fact that a vehicle is the site of an injury or incident is insufficient to create a connection between the use of the vehicle and the injury so as to bring the injury within policy coverage. Florida Farm Bureau Ins. Co. v. Shaffer, 391 So.2d 216, 217 (Fla. 4th DCA 1980). The circumstances surrounding the injuries sustained by Gomez and Chich do not support a determination that the injuries were the result of an accident arising out of the ownership, maintenance or use of the jitney bus. See Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347 (Fla. 1989).
In Race, the supreme court analyzed liability coverage using the term "arising out of the ownership, maintenance, or use of an automobile", and referenced the following three rules to determine the insurer's liability:
1. The accident must have arisen out of the inherent nature of the automobile, as such;
2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have been terminated;
3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
Race, 542 So.2d at 349 (quoting 6B JOHN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE, § 4317 (Buckley ed.1979)).
Applying this analysis to the facts of this case, it is clear that Lancer was not liable. The first prong is not satisfied because there was no automobile accident. The shootings were intentional and did not arise out of the inherent nature of the jitney bus.[2] Prong two is not satisfied because the jitney's use was terminated when the hijackers exited the jitney bus, after the hijacking but before the shootings. Finally, prong three is not applicable because the plaintiffs' injuries were caused by a gun and not by the jitney bus.
Injuries caused by criminal assaults in and about an automobile, but which are not caused by the automobile itself, or do not arise out of the operation, maintenance, or use of an automobile, are not covered under a policy of automobile liability or uninsured motorist coverage. Race, 542 So.2d at 351. The auto must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. Taylor v. Phoenix Ins. Co., 622 So.2d 506, 509 (Fla. 5th DCA 1993). The driving of the jitney bus had nothing to do with the plaintiffs' injuries. A bullet wound does not arise out of the use of a motor vehicle. Id. Shooting a gun is an act unrelated to use of a motor vehicle which in no way depends upon or involves a motor vehicle. Id. The plaintiffs' injuries occurred by the shooting of hijackers not the use of the jitney bus. *338 See Niglio v. Omaha Prop. and Cas. Ins. Co., 679 So.2d 323, 325 (Fla. 4th DCA 1996)(no UM coverage where car merely transported and contained shooters; gun, not car produced injury).
Neither liability nor uninsured motorist coverage cover injuries or death that are caused by criminal shootings, beatings and like, even though the shootings and beatings happened to have occurred in the vicinity of a motor vehicle. See Progressive Express Ins. Co. v. Russell, 763 So.2d 557, 558 (Fla. 4th DCA 2000)(plaintiff who was hit in the face with an object by a criminal assailant who left his vehicle to assault the plaintiff was not entitled to UM benefits because the plaintiff's injuries did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle); Trott v. Finlayson, 690 So.2d 718, 719 (Fla. 4th DCA 1997)(UM coverage did not exist where gun, and not automobile, produced injuries); State Farm Fire and Cas. Co. v. Gonzalez, 623 So.2d 616, 617 (Fla. 3d DCA 1993)(UM policy did not cover injury to insured's eye when another driver shot the insured with paint pellet); Jones v. State Farm Mut. Auto. Ins. Co., 589 So.2d 333, 334 (Fla. 5th DCA 1991)(victim's death was not within policy coverage where she was abducted by estranged husband in covered vehicle, and murdered while in vehicle).
We agree that there was an insufficient nexus between the jitney bus and the plaintiffs' injuries to effectuate coverage under the terms of Lancer's insurance policy.[3] Gomez and Chich's injuries did not arise or result from the ownership, maintenance, or use of an automobile for liability insurance purposes. Accordingly, the order of the lower court is reversed and remanded with directions to enter summary final judgment in favor of Lancer.
Reversed.
NOTES
[1] The remaining issue was related to the amount of damages to be paid by Lancer.
[2] In accordance with general causality requirements, since a criminal assault is not the usual risk anticipated under an automobile liability insurance policy, a victim of an assault may normally recover under such a policy only when the vehicle itself was used in some manner to cause or produce the injury. 31 FLA. JUR.2D Insurance § 2952 (1995).
[3] In light of the fact that we find that Lancer's insurance policy does not provide coverage for the plaintiffs' injuries, we decline to address Lancer's argument on release before assignment.