WELLS, Chief Judge.
Allstate Insurance Company appeals from a final judgment requiring it to cover $32,000 in damages sustained by Jonathan Adrabi under the uninsured motorist (“UM”) provisions of Adrabi’s Allstate policy. Because Adrabi’s injuries did not arise out of the ownership, maintenance or use of an uninsured vehicle, we conclude that his injuries were not compensable under the UM coverage delineated in the policy at issue and reverse the judgment.
In August 2000, Adrabi was the victim of a carjacking during which he was substantially injured. On the night in question, Adrabi was dropped off at his Ford Mustang by friends after an evening out. As Adrabi drove out of the parking lot where his car had been parked, he stopped behind another car at a stop sign. After Adrabi stopped his car, the occupants of the car ahead of him got out of their car and accosted him, injuring him while pushing him against, and then while forcing him into, his own car. The assailants also hit him with the barrel of a shotgun, forced *8 him into the trunk of his car, and then drove around at high rates of speed, periodically slamming on the brakes, banging him against the interior of the trunk. The assailants also repeatedly taunted him with threats of violence and death, repeatedly playing a song titled “Kill You” through the car’s compact disc player.
Adrabi subsequently sought to recover under the UM provisions of the Allstate policy insuring his car,[1] arguing essentially that his vehicle became a UM vehicle once under the control of his assailants. After Allstate denied coverage, rejecting this unique theory, Adrabi filed the underlying action for declaratory relief and to recover UM benefits under the UM provisions of his Allstate policy. The court below determined that Adrabi’s injuries were covered by the policy, and he was awarded $32,000 for his injuries. We reverse the award because the damages incurred are not covered by the UM provisions of this policy.
The UM provision at issue here, in pertinent part, provides as follows:
We will pay damages for bodily injury ... which a person insured is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured ... auto.
Adrabi’s injuries did not arise out of the ownership, maintenance or use of a uninsured vehicle. By his own testimony, the injuries claimed all occurred at the hands of the assailants both inside and outside his Mustang — an auto covered by his Allstate policy — not a UM vehicle at all — and as such, his injuries were not covered by this policy.
The UM provisions of Adrabi’s policy defines an “insured auto” as a vehicle described in the policy — in this case, Adrabi’s Mustang. It also defines the term “uninsured auto” as: (1) a motor vehicle which has no bodily injury insurance policy in effect at the time of the accident; (2) a motor vehicle for which the insurer denies coverage; or (3) a hit-and-run motor vehicle. Adrabi’s car, even after being stolen, was none of these, and thus was not a UM vehicle even after it was carjacked.
We reject the notion advanced by Adra-bi that the decision in Curtin v. State Farm Mutual Automobile Insurance Co., 449 So.2d 293 (Fla. 5th DCA 1984), stands for the proposition that Adrabi’s car became an “uninsured vehicle” for purposes of UM coverage once his assailants took possession of it. Curtin is not at all on point. That case did not involve a claim that an insured vehicle went from being insured to uninsured once it was carjacked. In fact, that case did not involve a stolen vehicle at all. Rather, Curtin considered an altogether different question as to the availability of UM coverage under a policy other than the one covering the vehicle in which the insured was traveling when injured. Id. at 294-95.
If anything, Curtin confirms that the insured auto could not be transformed into a UM vehicle so as to allow UM recovery on the insurance policy covering that vehicle:
Appellant concedes on appeal that he is barred from any recovery under the policy insuring the Cadillac, the car in which he was injured. The family exclusion provision of the liability portion of that policy would clearly bar his recovery there. Under the uninsured motor vehicle coverage, he is also clearly *9 barred by the language of the policy which provides that the vehicle insured under that policy cannot be considered to be an uninsured motor vehicle.
This kind of exclusion has been upheld by the Florida Supreme Court in Reid v. State Farm Fire & Casualty Company, 352 So.2d 1172 (Fla.1977).
Curtin, 449 so.2d 294. Only because of an entirely separate insurance policy was UM coverage found in Curtin, making the facts and findings of Curtin irrelevant to the instant matter.
As Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347, 351 n. 1 (Fla.1989) (emphasis added), clearly states:
PIP insurance covers injuries which arise out of the ownership, maintenance, or use of any motor vehicle; whereas automobile liability UM coverage contemplates injuries which arise out of the ownership, maintenance, or use of the tortfeasor’s motor vehicle.
There was simply no evidence in this case that Adrabi’s injuries arose out of the ownership, maintenance or use of the assailants’ vehicle. See also Progressive Express Ins. Co. v. Russell, 763 So.2d 557, 559 (Fla. 4th DCA 2000) (confirming that a policy providing UM coverage for accidents “arising out of the ownership, maintenance, or use of an automobile” does not extend coverage in circumstances “where the automobile merely transports or contained the assailant”).[2] We therefore find no basis for imposing coverage under the UM portion of the policy insuring Adrabi’s car for what transpired that day.
Furthermore, while the above analysis resolves the instant UM coverage question, we also question whether the necessary elements for recovery as set out in Race are present in this case at all. Therein, the Florida Supreme Court certainly decided that “intentional acts should not militate against the recovery of UM benefits by an innocent person injured by the intentional act of an uninsured motorist.” Race, 542 So.2d at 349. However, the court then referenced a treatise, stating that in order to recover UM benefits an insured must establish that:
1. The accident must have arisen out of the inherent nature of the [uninsured] automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The [uninsured] automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.”
Id. at 349 (quoting 6B J,. Appleman, Insurance Law & Practice § 4317 (Buckley ed. 1979)).[3]
Here, even if a UM vehicle were involved, using a vehicle to inflict injuries at the receiving end of a beating or the vehicle’s trunk as a vessel of containment in no way goes to the inherent nature of the automobile and thus, to our way of thinking, Adrabi’s vehicle was no more than a mere contributor to the cause of the condition which produced the injury. See id. at 349-50 (citing cases where the accidents at issue were so attenuated from the ownership, maintenance, or use of the uninsured automobile to support a finding of coverage).
As this court observed in Lancer Insurance Co. v. Gomez, 799 So.2d 334, 337 (Fla. 3d DCA 2001):
*10 Injuries caused by criminal assaults in and about an automobile, but which are not caused by the automobile itself, or do not arise out of the operation, maintenance, or use of an automobile, are not covered under a policy of automobile liability or uninsured motorist coverage.
We simply cannot adopt Adrabi’s attempt to pigeon hole himself into that exception by claiming it was the automobile that caused his injury — it was the actions of his assailants that did that.
“Coverage determinations are legal questions decided by the court, not a jury.” AON Trade Credit, Inc. v. Quintec, S.A., 981 So.2d 475, 478 (Fla. 3d DCA 2008). Because Adrabi’s injuries did not arise out of the ownership, maintenance, or use of an uninsured auto, his policy’s UM provisions simply did not cover his injuries. Accordingly, we reverse and remand with instructions to enter judgment in Allstate’s favor.

. Adrabi did not make a claim for personal injury protection ("PIP”) benefits or for coverage under the bodily injury liability limits of the instant policy. We therefore do not discuss the application of either coverage in this opinion.

. Which is why Adrabi could not look to the assailants’ vehicle as the basis for his UM claim and he thus turned to his own vehicle in asserting the UM claim in this case.

. As Race explains, the term "accident” may include intentional criminal acts. Id. at 348.