508 So.2d 1276 (1987)
NATIONWIDE MUTUAL FIRE INSURANCE CO., Appellant,
v.
Richard T. RACE, and Suzanne Race, His Wife, Appellees.
Nos. 86-1091, 86-1588.
District Court of Appeal of Florida, Third District.
June 9, 1987.
Rehearing Denied July 20, 1987.
*1277 Gaebe and Murphy, Coral Gables, and David Goldbos, for appellant.
Deutsch & Blumberg, P.A. and Edward R. Blumberg, Miami, Jeanne Heyward, for appellees.
Before HUBBART, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
Nationwide Mutual Fire Insurance Company [Nationwide] appeals from an order of the trial court granting partial summary judgment in favor of Nationwide's insureds, Richard Race and his wife, Suzanne, and awarding Race attorneys' fees. We reverse the order based upon our finding that the trial court erred in concluding that Race's policy with Nationwide provided uninsured motorist [UM] coverage for the incident in question and in further determining that Nationwide was estopped from denying Race UM benefits.
The incident giving rise to Race's claims for coverage under his policy with Nationwide occurred when Race was assaulted on a highway following a minor automobile collision. Race had stopped his automobile at a red light when it was struck from the rear by a car driven by Robert E. Thompson. Race immediately got out of his car and approached Thompson to arrange for the exchange of pertinent information. *1278 Race was attempting to remove his insurance papers from a small leather bag he carried when Thompson exited his vehicle and assaulted him, knocking him to the ground. Race suffered permanent injuries, including broken teeth, a broken jaw, and a fracture of his right hand.[1]
Because Thompson had no automobile insurance, Race sought personal injury protection [PIP] and uninsured [UM] benefits from his own insurer, Nationwide. Race's policy with Nationwide contained a clause for PIP benefits "for accidental bodily injury of an insured that arises out of the ownership, maintenance or use of a motor vehicle." Nationwide denied Race's claim for PIP coverage on the ground that Race's assault by Thompson "did not arise accidentally from ownership, maintenance or use of a motor vehicle." Race and Nationwide subsequently entered into a stipulation which developed into an agreed partial summary judgment. This agreement stated that Nationwide was liable to Race for PIP benefits since Race's injuries "arose out of the maintenance, use or operation of his [Race's] motor vehicle."
Race thereafter requested payment of UM benefits under his Nationwide policy. The policy contained the following UM provision:
Under this coverage we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an uninsured or underinsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance or use of the uninsured or underinsured vehicle.
Nationwide denied Race's claim. Race filed a petition to compel arbitration and a complaint for damages. Nationwide answered and counterclaimed for declaratory relief on the theory that Race's injuries resulted from "an intentional assault by a third person outside of the plaintiffs' motor vehicle and not as a result of the operation, maintenance or use of an `uninsured motor vehicle.'" Nationwide and Race both moved for final summary judgment on the issue of UM coverage. Following a hearing on these motions, the trial court granted partial summary judgment in favor of Race on two bases. The court first concluded that Race's injuries "resulted from an accident arising out of the ownership, maintenance and use of the uninsured vehicle," thereby bringing Race's injuries within the scope of UM coverage provided in Nationwide's policy. The court also determined that, based upon the judgment rendered in the prior litigation between Race and Nationwide involving PIP coverage, the doctrine of collateral estoppel precluded Nationwide from denying UM benefits to Race. Both grounds stated by the trial court are erroneous and compel our reversal of the partial summary judgment and the award of attorney's fees granted in favor of Race.

I. Collateral Estoppel
Nationwide was not collaterally estopped from denying Race UM benefits merely because it agreed to pay Race PIP benefits. The essential elements of collateral estoppel are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction. Mobil Oil Corp. v. Shevin, 354 So.2d 372, 374 (Fla. 1977); Husky Indus., Inc. v. Griffith, 422 So.2d 996, 999 (Fla. 5th DCA 1982). The party claiming the defense of estoppel has the burden of establishing that the issue in question was actually litigated and determined in the prior action. Krug v. Meros, 468 So.2d 299, 302 (Fla. 2d DCA), rev. denied, 480 So.2d 1295 (Fla. 1985). Race has failed to show that the subject of UM benefits was raised and determined in the previous agreement resolving PIP benefits. Each type of coverage was controlled by a separate clause specifically delineating the scope of protection. The PIP provision covered injuries from accidents flowing from the ownership, maintenance, or use of a motor vehicle. The UM clause covered injuries from accidents flowing from the *1279 ownership, maintenance, or use of an uninsured or underinsured motor vehicle. Pursuant to these respective provisions, it cannot be said that the coverage issues were identical. The collateral estoppel requirement that the issues be identical is completely lacking from this situation.
Despite the trial court's finding that Nationwide was estopped from denying Race UM benefits by virtue of its agreement to pay PIP benefits,[2] an insurer may properly be obligated to pay one type of benefit without the other. See, e.g., Tuerk v. Allstate Ins. Co., 469 So.2d 815 (Fla. 3d DCA 1985) (only PIP coverage obtained where insured was shot in his vehicle which was mistaken for similar vehicle targeted by gunman), rev. denied, 482 So.2d 347 (Fla. 1986); Pena v. Allstate Ins. Co., 463 So.2d 1256 (Fla. 3d DCA) (insured shot by passenger in his taxicab only entitled to PIP benefits, not UM benefits, since no uninsured vehicle involved), rev. denied, 476 So.2d 672 (Fla. 1985). Nationwide's posture that it was required to pay Race PIP benefits but not UM benefits was not, as Race has argued, fatally inconsistent.

II. UM Coverage.
The trial court erred in finding the existence of UM coverage for Race's assault by Thompson. The threshhold test for automobile liability coverage is whether there is some nexus between the motor vehicle and the injury. Government Employees Ins. Co. v. Novak, 453 So.2d 1116, 1119 (Fla. 1984). Although the standard phrase, "arising out of the use of a motor vehicle," is to be broadly construed in order to effect PIP coverage without reference to traditional tort principles of "causation" and "foreseeability," id.; Hernandez v. Protective Casualty Ins. Co., 473 So.2d 1241, 1242 (Fla. 1985), UM benefits are not implicated in the instant scenario since Race's injuries were unrelated to Thompson's uninsured vehicle. The attack was not an accident arising out of the ownership, maintenance, or use of Thompson's uninsured vehicle but was, rather, an intervening criminal act by Thompson, precipitated wholly by Thompson's inexplicable reaction to Race's post-collision conduct.
More direct contact between a vehicle and the injured claimant is required before coverage will be triggered. In Fleming v. Hill, 501 So.2d 715 (Fla. 5th DCA 1987), the court found that the Novak nexus test had not been fulfilled where the insured driver, Fleming, enraged over the refusal of another driver, Dunn, to move his car, fatally shot Dunn. Dunn's personal representative brought a wrongful death action against Fleming and his insurers. The reviewing court determined that the trial court had improperly granted summary judgment for Fleming's homeowner's insurance company on the theory that Dunn's injury had arisen out of the use of a motor vehicle. We agree with the analysis set forth by the Fleming court in concluding that the Novak nexus is also absent in the instant case. Cf. Fortune Ins. Co. v. Ferreiro, 458 So.2d 834 (Fla. 3d DCA 1984) (claimant's gunshot wound inflicted by automobile driver who attempted to force off road truck in which claimant was passenger was accident which fell within UM coverage); Halpin v. Hilderbrand, 493 So.2d 75 (Fla. 4th DCA 1986) (UM coverage applied to injuries sustained by insured motorist who was beaten in her automobile by uninsured motorist after insured motorist inadvertently "cut off" uninsured motorst).
In this case both Race and Thompson were outside their cars on the road at the time of the assault. We will not rewrite the UM clause in Race's policy with Nationwide to expand the scope of coverage to include injuries unconnected to an uninsured motor vehicle. See Velasquez v. American Mfrs. Mut. Ins. Co., 387 So.2d 427 (Fla. 3d DCA 1980) (where policy provided UM coverage to any person occupying insured automobile, court could not extend UM coverage to cover injuries sustained by pedestrian who had left disabled *1280 insured vehicle to seek assistance and was injured by hit-and-run driver).
It would be anomalous to create coverage merely because Thompson's vehicle enabled Thompson to be placed in a position where he could attack Race. This is not the nexus between the injury and the use of an automobile contemplated by Novak. See, e.g., Doyle v. State Farm Mut. Auto. Ins. Co., 464 So.2d 1277 (Fla. 3d DCA 1985) (insured injured by robber as insured was exiting his automobile not entitled to coverage merely because automobile was situs of injury); Allstate Ins. Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984) (no coverage where insureds were shot in their vehicle by neighbor; mere fact that neighbor selected site of automobile for attempted slaughter insufficient nexus); Reynolds v. Allstate Ins. Co., 400 So.2d 496 (Fla. 5th DCA 1981) (no coverage for assault by intruder lurking in back seat of insured vehicle); Rustin v. State Farm Mut. Auto. Ins. Co., 254 Ga. 494, 330 S.E.2d 356 (1985) (no coverage for victim under insured's automobile liability policy where victim's car had hit insured's car and after both cars had stopped and both drivers had left their cars, victim ran toward insured causing insured to fatally shoot victim; victim's death not accident arising from insured's ownership, maintenance, or use of his car); Foss v. Cignarella, 196 N.J. Super. 378, 482 A.2d 954 (Law.Div. 1984) (stabbing of victim by insured driver after insured driver had hit victim's car and both drivers had left their vehicles was not accident arising out of use or ownership of insured vehicle so no coverage for victim under insured's policy).
For the foregoing reasons, we reverse the order of the trial court granting partial summary judgment in favor of Race. Our reversal of the partial summary judgment consequently requires reversal of the trial court's award of attorney's fees.
Reversed.
NOTES
[1] Thompson was subsequently charged with battery in a criminal case arising out of this incident in State v. Thompson, No. 83-13408 (Fla. 17th Cir.Ct. 1984).
[2] We do not pass upon the correctness of Nationwide's concession that it was obligated to provide PIP benefits for Race's injuries.