569 So.2d 1291 (1990)
Margaret CARPENTER and Charles Carpenter, Appellants,
v.
Collen J. SAPP and Allstate Insurance Company, Appellees.
No. 89-03465.
District Court of Appeal of Florida, Second District.
October 5, 1990.
Keith J. Lambdin of D. Russell Stahl, P.A., Tampa, for appellants.
*1292 George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee Allstate Ins. Co.
PATTERSON, Judge.
In this unusual case, Collen Sapp was towing a trailer of cattle with his motor vehicle. He lost control of the vehicle, the trailer overturned, and the cattle spilled onto the side of the road. The cattle, two bulls to be exact, became enraged, crashed through a fence, and commenced wreaking havoc to personal property in Charles and Margaret Carpenter's back yard. Mrs. Carpenter had the misfortune to exit the rear door of her house, and, confronted by the bulls, she turned and fled, falling and injuring herself.
Sapp was insured by Auto Owners Insurance Company with liability limits of $15,000. The Carpenters are insured by Allstate Insurance Company with uninsured motorist coverage in the amount of $200,000. Auto Owners offered $12,500 in settlement to the Carpenters. The Carpenters asked permission of Allstate to accept the offer in contemplation of pursuing an underinsured claim against Allstate. Allstate refused.
Thereafter the Carpenters, in a three-count amended complaint, brought an action against Sapp and Allstate. Count I seeks damages from Sapp for motor vehicle negligence. Count II is an underinsured motorist claim against Allstate. Count III is a first-party bad faith claim against Allstate for refusing to permit the Carpenters to accept the Auto Owners offer.
Allstate responded to the amended complaint, which named it as a party, with a motion to dismiss. It claimed in principal part that the complaint failed to establish that the Carpenters' damages, if any, resulted from the ownership, maintenance, or use of an underinsured motor vehicle. The lower court, relying on Race v. Nationwide Mutual Fire Ins. Co., 542 So.2d 347 (Fla. 1989), dismissed the complaint as to Allstate with prejudice. For the reasons stated below we hold that Race does not support dismissing the amended complaint with prejudice, and we reverse.
In Race two motorists were involved in a minor collision. Race exited his vehicle and approached Thompson, the other driver, who remained in his vehicle. When Race reached into a small bag to remove his insurance papers and identification, Thompson believed he was reaching for a weapon and assaulted him, inflicting serious injuries. Thompson was uninsured and Race brought suit under his uninsured motorist coverage.
The trial court granted partial summary judgment in Race's favor, finding that the incident arose from the "ownership, maintenance, or use of a motor vehicle." The Third District Court of Appeal reversed, determining that "the threshold test for automobile liability coverage is whether there is some nexus between the motor vehicle and the injury." See Nationwide Mutual Fire Ins. Co. v. Race, 508 So.2d 1276 (Fla. 3d DCA 1987). In so doing, it relied on Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla. 1984), which states:
It is well settled that "arising out of" does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury.
453 So.2d at 1119. The district court went on to hold that such a "nexus" did not exist in Race's situation, because Thompson's attack was an intervening criminal act not related to the use of Thompson's vehicle.
The Florida Supreme Court reviewed and approved the Third District's determination that Race's injuries were not covered by his uninsured motorist policy. However, it disapproved that court's application of the Novak "nexus" test to uninsured motorist questions. Distinguishing the Novak test for personal injury coverage from the uninsured motorist coverage in Race, the supreme court said:
However, we are unwilling to apply the liberal PIP interpretation of nexus to claims for UM benefits. .. . [W]e believe that the term "arising out of the ownership, maintenance, or use" of a motor vehicle as contained in a UM policy should be given the same interpretation *1293 as that language is construed in automobile liability policies.
542 So.2d at 349. The court then went on to quote 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979).
This treatise contains a three-part coverage test, which if taken literally, could support the trial judge's determination in this case. It states:
1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
6B Appleman, section 4317 (Buckley ed. 1979). However, we believe that construing Race to include this three-prong test in the law of Florida would be misplaced.
First, such a construction would be a substantial departure from well-entrenched Florida case law as we understand it. Second, the Appleman quote appears to be out of context to the balance of the Race opinion, and nowhere does the court express an intent to adopt it as the law of our state. As Justice Barkett observed, "I cannot discern from the majority opinion what test will control this issue in the future." 542 So.2d at 351 (Barkett, J., concurring in result only). Although in Race the supreme court declined to apply the Novak nexus test to UM coverage, it did nothing to disturb the rule of construction that Novak expressed.
The Novak court said:
The clause "arising out of the use of a motor vehicle," is framed in such general, comprehensive terms in order to express the intent to effect broad coverage. Red Ball Motor Freight, Inc., v. Employers' Mutual Liability Insurance Co., 189 F.2d 374 (5th Cir.1951). Such terms should be construed liberally because their function is to extend coverage broadly.
453 So.2d at 1119 (citation omitted). In this regard it is not necessary for the vehicle to proximately cause the injury. National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). The injury must, however, "arise from" the use of the vehicle. In other words, the injury must originate or flow from the use of the vehicle. St. Paul Fire and Marine Ins. Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973).
When, as in this case, the use of a vehicle sets into motion a chain of events the issue is whether that chain, uninterrupted, results in the injury complained of in such a manner that it could be contemplated that the injury could result from the initial incident. Unlike Race, wherein an assault occurred well after a minor collision had come to its natural conclusion, we determine that injury to persons and property immediately adjacent to an accident scene wherein dangerous animals are released by the impact can clearly be contemplated as arising from that incident. See Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520 (Fla. 1980). It was, therefore, error to dismiss the amended complaint with prejudice.
Allstate's motion to dismiss raised other issues, which appear to be unresolved. This opinion does not address, and is not intended to influence, the resolution of those issues.
Reversed and remanded.
CAMPBELL, A.C.J., and FRANK, J., concur.