679 So.2d 323 (1996)
Michael NIGLIO, John Niglio and Donna Niglio, Appellants,
v.
OMAHA PROPERTY AND CASUALTY INSURANCE COMPANY, Paul Joseph Anthony Balliro, James Joseph McClean, Charles Samuel Miesse, and as Owner of Millennium, Inc., a Dissolved Corporation, Insurance Company, Appellees.
No. 95-1416.
District Court of Appeal of Florida, Fourth District.
August 21, 1996.
Rehearing and Rehearing Denied September 26, 1996.
Steven A. Edelstein of Law Offices of Steven A. Edelstein, Coral Gables, and James W. Knight, Jr., of James W. Knight, Jr., P.A., Fort Lauderdale, for appellants.
James C. Kelley of Kelley & Thompson, P.A., Miami, for Appellee-Omaha Property and Casualty Insurance Company.
Rehearing and Rehearing En Banc Denied September 26, 1996.
GROSS, Judge.
The issue in this case is whether a pedestrian shot in a drive-by shooting is entitled to coverage under uninsured motorist and personal injury protection provisions of an automobile insurance policy.
In November, 1990, seventeen-year old Michael Niglio and some friends drove his parents' automobile to a Fort Lauderdale nightclub. They parked in a mall parking lot next to the club and got out of the car. When Niglio was on his way to the club, about 20 feet away from the car, a Mustang drove by with its occupants firing guns, as part of a dispute between rival gangs. Niglio dove for cover, but a bullet struck him. In their depositions, the two shooters said that if they had not had a car, they would not have resorted to guns, but would have settled for a fist fight; they used the guns because the car enabled them to escape.
Niglio and his parents filed an action against appellee, seeking coverage under the uninsured motorist (UM) and personal injury protection (PIP) provisions of the parents' automobile policy. The trial court granted the insurance company's motion for summary *324 judgment and dismissed the case with prejudice.
Turning first to the issue of PIP coverage, it is undisputed that Niglio was a pedestrian at the time of the shooting. Coverage is therefore controlled by section 627.736(4)(d)1, Florida Statutes (Supp.1990), which provides that an insurer shall pay benefits for accidental bodily injury that a covered person sustains "while not an occupant of a selfpropelled vehicle if the injury is caused by physical contact with a motor vehicle." See Hernandez v. Protective Casualty Ins. Co., 473 So.2d 1241, 1243 (Fla.1985).[1] Courts have construed this statute to not require that a plaintiff have actual physical contact with a motor vehicle to be entitled to coverage. Interpreting the statutory language in Lumbermens Mutual Casualty Co. v. Castagna, 368 So.2d 348, 350 (Fla.1979), the supreme court wrote:
The language of the legislature which expressly states that the insured's injuries be "caused by physical contact with a motor vehicle," requires, in our view, an inquiry regarding cause which employs the traditional tort concepts of causation.... Actual physical contact between the vehicles is not a prerequisite to recovery under the statute. The mere involvement of a "motor vehicle," however, is not enough. Causation is the necessary link that connects plaintiff's injuries to the physical contact and brings them within the statute.
Castagna utilized the "causation" concept as an aid in statutory analysis, stretching the application of the statute without breaking the required close connection between a motor vehicle and an injury. Any more expansive approach would have ignored the drafter's use of the term "physical contact with a motor vehicle."
Recently, this court followed Castagna and held that a pedestrian who dove out of the way to avoid being struck by an automobile was entitled to PIP coverage under section 627.736(4)(d)1. Amica Mutual Insurance Co. v. Cherwin, 673 So.2d 112 (Fla. 4th DCA 1996). In cases applying the Castagna causation analysis to injuries not caused by direct contact with a motor vehicle, the unifying principle is that coverage exists when a car is the most substantial factor in bringing about the victim's injury. For example, Arnold v. South Carolina Ins. Co., 425 So.2d 1164, 1165 (Fla. 2d DCA), rev. denied, 437 So.2d 677 (Fla.1983), found PIP coverage where someone pushed the plaintiff to the pavement to save him from a car that was out of control as a result of a traffic accident. See Cherwin, 673 So.2d at 113 (plaintiff injured when he dove out of the way of an errant vehicle); Doyle v. Faford, 517 So.2d 778, 779 (Fla. 5th DCA 1988)(car struck mobile home containing plaintiff); Royal Indemnity Co. v. Government Employees Ins. Co., 307 So.2d 458 (Fla. 3d DCA 1975)(motor vehicle struck parked car, causing it to strike pedestrian); contra Smith v. Fortune Ins. Co., 506 So.2d 73 (Fla. 5th DCA 1987). This view is consistent with Castagna's "traditional tort concepts of causation," which include the notion that the tort be a direct, substantial factor in producing injury. See McCain v. Florida Power Corp., 593 So.2d 500, 502, 504 (Fla.1992); Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227 (Fla. 1st DCA 1960), cert. denied, 127 So.2d 441 (Fla. 1961); Fla. Std. Jury Instr. (Civ.) 5.1a.
Where motor vehicles were incidental to the act causing injury, playing only supporting roles, courts have found no PIP coverage under section 627.736(4)(d)1. For example, Welty v. Continental Insurance Co., 498 So.2d 643 (Fla. 4th DCA 1986), involved a plaintiff injured by a front end loader while trying to rescue a Ford Bronco from a mud hole. The plaintiff and his friends had been riding in the off-road vehicle until it became stuck. The front end loader was not a "motor vehicle" under section 627.732(1), Florida Statutes (1983). Applying Castagna, this court held that "there [did not] exist the necessary causal link between [the plaintiff's] injuries and the use of a motor vehicle" so that there was no PIP coverage under section 627.736(4)(d)1. Id. at 644. Welty demonstrates *325 that Castagna requires something more than the application of a simple "but for" test to determine coverage. See Underwriters Guarantee Ins. Co. v. Gregory, 582 So.2d 11 (Fla. 3rd DCA)(no coverage under section 627.736(4)(d)1 when plaintiff slipped on greasy soap at Shell station where she had gone to fuel up her van), rev. denied, 592 So.2d 680 (Fla.1991).
In a statute regulating motor vehicle insurance, the phrase "caused by physical contact with a motor vehicle" can only be expanded so far by judicial interpretation. Under Castagna `s "traditional tort concepts of causation," Niglio's injury was caused by the bullet, not the Mustang. The car was not the most substantial factor in bringing about the injury. Although it enabled and facilitated the crime, the car was only incidental to the act causing the injury. Thus, there is no PIP coverage under section 627.736(4)(d)1.
The availability of UM coverage turns on whether Niglio's injury arose out of the ownership, maintenance, or use of the shooters' Mustang. Race v. Nationwide Mutual Fire Ins. Co., 542 So.2d 347, 349 (Fla.1989). To resolve the issue of coverage in UM cases, the supreme court in Race decided not to apply the broad "nexus test" of Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984), applicable to PIP coverage under section 627.736(1). Race framed a more narrow test for UM coverage than for PIP, even though the coverage language in the UM policy"arising out of the ownership, maintenance, or use"was identical to that of section 627.736(1). To determine the scope of coverage, Race indicated that the language of a UM policy was to be "given the same interpretation as that language is construed in automobile liability policies." 542 So.2d at 349. The supreme court cited with approval a provision of Appleman, Insurance Law and Practice, which analyzes the scope of coverage in a liability policy:
It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in automobile liability policy [sic] means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
....
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
Id. at 349 (quoting 6B J. Appleman, Insurance Law and Practice, § 4317 (Buckley ed.1979)). To fix the scope of UM coverage, Race uses causation concepts similar to that of Castagna. This mode of analysis limits coverage to those cases where injury is closely connected to a motor vehicle, so as not to do violence to the policy language "as understood by a person of reasonable intelligence."
It is the third rule from the Appleman citation which precludes a finding of UM coverage in this case. At most, the Mustang only contributed to the condition producing the injury. The car merely transported and contained the shooters. The gun, and not the car, produced the injury. This was not a case where the vehicle was the instrumentality causing the injury. Cf. Leatherby Ins. Co. v. Willoughby, 315 So.2d 553 (Fla. 2d DCA 1975). Race cited with approval Florida Farm Bureau v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 613 (Fla.1981). Id. at 350. There, a shooter fired three shots from a car, one of which struck the plaintiff. This court found no coverage under a liability policy holding
that the fact that an automobile was used to transport the assailant to the scene and the fact that the gun which produced the injury was thereafter fired from such automobile *326 do not constitute sufficient circumstances to establish a causal relationship between the use of the automobile and the injury for purposes of invoking the automobile liability insurance coverage of the assailant.
Florida Farm Bureau, 391 So.2d at 218. This holding applies with equal force to this case. See Taylor v. Phoenix Ins. Co., 622 So.2d 506 (Fla. 5th DCA 1993), rev. denied, 634 So.2d 627 (Fla.1994); State Farm v. Gonzalez, 623 So.2d 616 (Fla. 3d DCA 1993); Northern Ins. Co. v. Hampton, 510 So.2d 649 (Fla. 5th DCA), rev. denied, 518 So.2d 1275 (Fla.1987).
Appellants rely heavily on Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974), cert. discharged sub nom., National Ben Franklin Ins. Co. v. Valdes, 341 So.2d 975 (Fla. 1976). There the third district found liability coverage where a passenger threw a glass beer mug out of the window of a speeding car, striking the victim's head and causing his death. The expansive interpretation of Valdes has been muted by the approach to liability coverage adopted by Race, which uses causation analysis to narrow the scope of coverage. To the extent that it is still viable, Valdes is limited to its unique facts, where the speed of the car contributed substantially to the velocity of the beer mug, which was the crucial ingredient in the severity of the injury. No fact in this case so inexorably links the Mustang to the injuries sustained as a result of the shooting. There is dicta in Taylor which muses that coverage in a shooting case might exist if the car jiggled and "caused the bullet to go awry." Taylor, 622 So.2d at 510. We decline appellants' invitation to apply that principle to create coverage in this case, for such vehicular participation in a drive-by shooting is merely an incidental contribution to the shooting causing the injury, not conduct which itself produces the injury. See Race, 542 So.2d at 349.
AFFIRMED.
DELL and SHAHOOD, JJ., concur.
NOTES
[1] It is the applicability of section 627.736(4)(d)1 which distinguishes this case from the line of cases based on the broader standard of section 627.736(1), Florida Statutes (Supp.1990), where coverage is available for an injury "arising out of the ownership, maintenance or use of a motor vehicle." E.g., Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984).