730 So.2d 700 (1999)
NEW HAMPSHIRE INSURANCE COMPANY, Appellant,
v.
Randall OLIVER, Appellee.
No. 98-3232
District Court of Appeal of Florida, Fourth District.
March 3, 1999.
Rehearing Denied May 12, 1999.
Gary Khutorsky of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellant.
Jack M. Sobel of Accident Law Offices of Philip DeBerard, Stuart, for appellee.
PER CURIAM.
Appellant, New Hampshire Insurance Company ("New Hampshire"), appeals from a partial summary judgment entered in favor of Appellee, Randall Oliver ("Oliver") concluding that, as a matter of law, Oliver was entitled to uninsured motorist coverage. We reverse and remand for further proceedings.
Oliver was an officer with the Seminole Tribe of Florida's Department of Law Enforcement (the "Tribe"). Vehicles driven by officers of the Tribe are insured under a policy issued by New Hampshire. The insurance coverage provided by New Hampshire includes underinsured and uninsured motorist benefits. On July 2, 1994, while on duty, Oliver was operating a stationary radar in one of the Tribe's police vehicles, when he clocked a blue Ford pick-up truck traveling in excess of 55 miles per hour. Oliver pursued the truck, and a high speed chase ensued. During the chase, Oliver lost sight of the truck, and turned around to determine *701 whether the truck may have pulled off the road. Shortly thereafter, Oliver heard a woman crying for help, and upon looking in the direction of the cries, noticed the pickup truck submerged in a canal with a woman sitting on top. Oliver exited his police vehicle and attempted to rescue the occupants of the overturned vehicle. Oliver was injured while climbing in and out of the canal as part of his rescue efforts. The truck was driven by an uninsured motorist.
Following the incident, Oliver filed a complaint for declaratory relief and damages against New Hampshire, seeking a declaration that he was entitled to uninsured motorist ("UM") coverage under New Hampshire's policy. Thereafter, Oliver filed a motion for summary judgment on the issue of UM coverage. The trial court entered summary judgment in favor of Oliver, concluding that, as a matter of law, Oliver was entitled to UM coverage. This appeal followed. On appeal, New Hampshire maintains that Oliver was not entitled to uninsured motorist coverage under its policy issued to the Tribe. We agree.
The portion of New Hampshire's policy which gives rise to uninsured motorist coverage is entitled "Florida Uninsured Motorists Coverage Endorsement" ("UM endorsement"). Pursuant to the UM endorsement, New Hampshire provides UM coverage as follows:
We will pay all the sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by the "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle".
The UM endorsement identifies an "insured" as the named insured (i.e., Seminole Tribe of Florida Inc.), and "anyone else `occupying' a covered `auto'." "Occupying" is defined as being "in, upon, getting in, on, out or off" the covered vehicle.
While New Hampshire does not contest the fact that the police vehicle was a "covered auto" under the policy, New Hampshire, nevertheless, maintains that Oliver is not entitled to UM coverage pursuant to the above provision for two reasons. First, New Hampshire argues that because Oliver was not "occupying" the insured vehicle at the time he sustained his injuries, he does not qualify as an "insured" for purposes of UM coverage. Second, New Hampshire maintains that even if Oliver qualified as an "insured," he would still not be entitled to UM coverage as his injuries did not result from the "ownership, maintenance or use of the uninsured motor vehicle."
New Hampshire's first argument is sound, as Oliver makes no assertion that he qualifies as an insured under the UM endorsement because he was "occupying" the insured vehicle at the time he sustained his injuries. Rather, what Oliver argues is that he qualifies as an insured under the portion of the UM endorsement which identifies "You" as an insured. Oliver urges us to construe New Hampshire's policy in its entirety, and to apply the definition of "You" contained in the portion of the policy entitled Commercial General Liability Coverage Form ("General Liability policy") to the UM endorsement.
The General Liability policy provides that the word "You," wherever found throughout the policy, refers to the named insured (i.e., Seminole Tribe of Florida Inc.), and "any other person or organization qualifying as a named insured" under the policy. The General Liability policy further provides that an "employee" acting within the "scope of their employment" or "performing duties related to the conduct of []business" is also an "insured."
Hence, Oliver contends that since he was injured "on the job," and was performing duties related to the Tribe's business, he qualified as an insured under the General Liability policy's definition of "You." Further, that since the General Liability policy provides that its definition of "You" applies throughout the main policy, that definition should be applied to the UM endorsement to qualify him as an insured under that portion of the policy. We decline to make such an application because the UM endorsement addresses *702 the definition of an "insured." Thus, the UM endorsement's definition necessarily trumps the General Liability policy's definition for purposes of UM coverage.
As to New Hampshire's second argument, we agree that the availability of UM coverage turns on whether Oliver's injuries arose out of the "ownership, maintenance or use" of the uninsured motor vehicle. See Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347, 349 (Fla.1989). In Niglio v. Omaha Property and Casualty Ins. Co., 679 So.2d 323 (Fla. 4th DCA 1996), we analyzed the scope of UM coverage. In that case, we noted three rules to be applied in determining an insurer's liability under the "ownership, maintenance, or use" provisions in UM policies. Those rules are: 1) The accident must have arisen out of the inherent nature of the automobile; 2) The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; and 3) The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. Niglio 679 So.2d at 325, citing Race, 542 So.2d at 349 (quoting 6BJ. Appleman, Insurance Law and Practice § 4317 (Buckley ed.1979)). Further, we concluded that coverage is limited to those cases where injury is closely connected to the motor vehicle, so as not to do violence to the policy language "as understood by a person of reasonable intelligence." Id. at 325.
In Niglio, it was the third rule that precluded a finding of UM coverage. There, the plaintiff was injured in a drive by shooting. Id. at 323. The car in which the shooters were riding was uninsured, thus, the plaintiff sought coverage under his uninsured motorist policy. Id. We found that the gun, and not the car, produced the injury. Id. at 325. The car at issue merely transported and contained the shooters, thus, only contributed to the condition that produced the plaintiffs injuries. Id. at 325. As such, we concluded that the plaintiff's injuries did not arise out of the "ownership, maintenance, or use" of the uninsured motor vehicle. Id.
Recently, in Kelly v. Toth-Kip, 23 Fla. L. Weekly D1540, ___ So.2d ___, 1998 WL 329534 (Fla. 4th DCA June 24, 1998), we reached an identical conclusion. In that case, a police officer stopped an uninsured driver because he suspected that the driver was DUI. Id. at D1540, ___ So.2d at ___. After the driver failed several roadside sobriety tests, the officer informed her that she was under arrest. Id. As the officer attempted to handcuff the driver, she resisted, injuring the officer. Id. The officer sued his UM insurer, arguing that there was a sufficient connection between his injury and the uninsured vehicle so as to trigger UM coverage. Id. We found that the officer's injury occurred as a result of the driver's resistance, not as a result of the ownership, maintenance or use of the uninsured vehicle. Id. As such, the officer was not entitled to UM coverage.
We see this case similarly. Here, as in Niglio and Kelly, we do not believe that the uninsured vehicle produced Oliver's injuries. Oliver was injured as a result of climbing in and out of the canal in his attempts to rescue the occupants of the uninsured vehicle. While the driver's negligent use of the vehicle may have contributed to the conditions necessitating Oliver's rescue efforts, it was the rescue efforts, not the vehicle itself or the conduct of the driver which produced the injury. Thus, since the uninsured vehicle only contributed to the conditions that produced Oliver's injuries, we conclude that Oliver's injuries did not result from the "ownership, maintenance or use" of the uninsured motor vehicle. See Niglio, 679 So.2d at 325-326; Kelly, 23 Fla. L. Weekly at D1540, ___ So.2d at ___.
Oliver further argues that he is entitled to UM coverage based on the "rescue doctrine." We disagree. The basic precept of the "rescue doctrine" is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt. Zwinge v. Hettinger, 530 So.2d 318 (Fla. 2d DCA 1988). While this doctrine may be helpful to Oliver in stating a claim against the uninsured driver, we do not believe that it is applicable in this policy action against New Hampshire.
*703 Accordingly, because Oliver was not "occupying" the insured vehicle at the time of his injuries, nor did his injuries result from the "ownership, maintenance or use" of the uninsured vehicle, we conclude that Oliver was not entitled to UM coverage under New Hampshire's policy. As such, we reverse the summary final judgment in favor of Oliver and remand for entry of a final judgment in favor of New Hampshire consistent with this opinion.
DELL, GUNTHER and GROSS, JJ., concur.