763 So.2d 557 (2000)
PROGRESSIVE EXPRESS INSURANCE COMPANY, Appellant,
v.
Robert RUSSELL, Appellee.
No. 4D99-3530.
District Court of Appeal of Florida, Fourth District.
August 2, 2000.
Robert I. Buchsbaum of Kramer, Green, Zuckerman, Kahn & Greene, P.A., Hollywood, for appellant.
Scott Mager of Mager & Associates, P.A., Fort Lauderdale, for appellee.
POLEN, J.
Progressive Express Insurance Company ("Progressive"), timely appeals a non-final order granting Robert Russell's ("Russell") motion for summary judgment as to his entitlement to uninsured motorist (UM) coverage. After review, we conclude the court's order finding UM coverage was error, and we reverse.
Russell alleged that he was physically assaulted while he was in his vehicle stopped at a traffic light. Specifically, he testified that he, his girlfriend and son were traveling to his home in two separate vehicles. Russell stated that he proceeded ahead of his girlfriend's car, but eventually lost sight of her. Accordingly, Russell pulled off the road and waited for her. When his girlfriend came upon Russell's vehicle, she told him that a car behind her was pursuing her car and the occupants were shouting racial remarks. Russell *558 told his girlfriend to proceed in front of him and directed her to go to his home. As he was following her, Russell was stopped by a traffic light. In turn, the car that had been pursuing his girlfriend stopped behind Russell's car. One of the three occupants exited the vehicle, walked up to Russell's open driver's door window, and hit him in the face with an unidentified object. Russell's assailant reentered the vehicle and fled the scene.
Russell's injuries required hospitalization and surgery. Due to his injuries, Russell was unable to see the vehicle's license plate number. Accordingly, the vehicle and Russell's assailant were never located.
Following the altercation, Russell sought benefits under the personal injury protection (PIP) and UM provisions of his automobile insurance policy issued by Progressive. Progressive paid benefits to Russell under the PIP provisions, but denied coverage under the UM provisions. Consequently, Russell filed a complaint against Progressive in the circuit court seeking UM benefits and attorneys' fees under sections 627.727(8) and 627.428, Florida Statutes. Both parties filed motions for summary judgment and a hearing was held on the parties' motions.
At the hearing, Progressive argued that Russell was not entitled to UM benefits because his injuries did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle. To the contrary, Russell argued that since the vehicle carried his attacker, his injuries arose out of the ownership, maintenance, or use of an uninsured motor vehicle, and urged that the vehicle was the instrument used to cause his injury. The trial court granted Russell's motion but denied Progressive's motion. This timely interlocutory appeal followed.
On appeal, Progressive argues that Russell is not entitled to UM coverage. Russell asserts that since Progressive paid PIP benefits, it conceded that the accident arose out of the operation, maintenance, or use of any motor vehicle for purposes of UM coverage and that the broad policy language provides UM coverage under the facts of Russell's case.
In Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347 (Fla.1989), the Florida Supreme Court suggested the following three-pronged test to determine the insurer's liability in cases like Russell's:
1. The accident must have arisen out of the inherent nature of the automobile;
2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; and 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. Id.

Race, which involved similar facts to those at issue, is on point. In that case, Race received injuries from an uninsured motorist's intentional assault that took place after a automobile accident. Nationwide, maintaining that Race's injuries did not arise from the operation, maintenance, or use of an uninsured vehicle, denied Race's UM claim. Race sued Nationwide, and the trial court, on summary judgment, found that Race's injuries resulted from an accident "arising out of the ownership, maintenance or use of the uninsured or underinsured vehicle." Id. Moreover, the trial court determined that Nationwide was estopped from denying UM coverage because it had stipulated that it was liable to Race for PIP benefits. Id.
On appeal, the third district reversed, holding that there was no estoppel because the issues of coverage under PIP and UM provisions are not the same. Nationwide Mut. Fire Ins. Co. v. Race, 508 So.2d 1276 (Fla. 3d DCA 1987). It further found an insufficient nexus between the uninsured vehicle and Race's injury to permit recovery. See Race, 542 So.2d at 348.
The supreme court, applying the above three-prong test, affirmed the third district's decision. Id. at 349. In doing so, it *559 noted that PIP insurance covers injuries that arise out of the ownership, maintenance, or use of any automobile, while UM benefits are available for injuries that arise out of the ownership, maintenance, or use of the tortfeasor's motor vehicle. Id. at 351 n. 1. (Emphasis added). Other cases since Race have similarly declined to extend the definition of "arising out of the ownership, maintenance, or use" of an automobile to allow UM coverage where the automobile merely transports or contained the assailant. See New Hampshire Ins. Co. v. Oliver, 730 So.2d 700, 702 (Fla. 4th DCA 1999)(suggesting where the uninsured vehicle only contributed to the conditions that produced the insured's injuries, the injuries do not result from the "ownership, maintenance or use" of the uninsured vehicle); Niglio v. Omaha Property and Cas. Ins. Co., 679 So.2d 323, 325 (Fla. 4th DCA 1996)(affirming entry of summary judgment precluding a finding of UM coverage reasoning that the gun, and not the car, used in the drive-by shooting produced the injury).
Russell attempts to explain away Race contending that the uninsured vehicle was used to chase him down and transported the perpetrator who assaulted him. He urges that his position is supported by Carpenter v. Sapp, 569 So.2d 1291 (Fla. 2d DCA 1990) and Pomerantz v. Nationwide Mutual Fire Insurance Co., 575 So.2d 1311 (Fla. 3d DCA 1991). In Carpenter, an uninsured motor vehicle that was towing a trailer carrying two bulls overturned. The bulls ran onto Ms. Carpenter's property and she was injured in an attempt to run from the angry bulls. The trial court dismissed Ms. Carpenter's subsequent complaint with prejudice. In reversing the dismissal, the second district held,
[w]hen, as in this case, the use of a vehicle sends into motion a chain of events, the issue is whether that chain, uninterrupted, results in the injury complained of in such a manner that it could be contemplated that the injury could result from the initial incident.
569 So.2d at 1293. The court proposed that injuries to persons immediately near an accident where dangerous animals are released by the impact can be considered as arising from that incident. Id.
Similarly, in Pomerantz, the third district reversed the denial of UM coverage where a worker loading cut tree limbs into his uninsured truck, missed the truck, and struck Ms. Pomerantz' windshield injuring her. 575 So.2d at 1312. The court reasoned that since trucks, by their inherent nature, are used to be loaded and unloaded, Ms. Pomerantz' injuries arose out of the use of the vehicle. Id. at 1312-1313.
Russell's reliance on these cases is tenuous in light of Race and recent cases from this court and other districts. Because Carpenter and Pomerantz are so fact-specific, we hold it is implausible for Russell to fit his "assault" situation under such authority. Moreover, the other cases upon which he and the trial court relied are inapplicable in light of Race and its progeny. Accordingly, we reverse the order under review.
REVERSED.
STEVENSON and SHAHOOD, JJ., concur.